**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LARRY MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 10 C 2163 |
| ) | |
| LT. CLEMONS, et al., ) | Judge Rebecca R. Pallmeyer |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Larry Martin (hereinafter "Plaintiff"), brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that, while confined at Cook County Jail, he was subjected to excessive searches in retaliation for grievances that he filed against Defendant Correctional Officer Samuel Clemons[1] (hereinafter "Clemons"). Defendants contend that the searches were conducted as a matter of policy for inmates who, like Plaintiff, were suspected of hoarding medication, obtaining medication from other inmates, or attempting suicide. For the reasons explained here, Defendants' motion for summary judgment is granted.

## BACKGROUND

Plaintiff Martin entered Cook County Jail on September 17, 2009, and remained there until April 16, 2010. (Martin Dep. [97-2], at 17, 18.) Plaintiff alleges that Defendant Correctional Officers Samuel Clemons, Phyllis Turner, and James McNamara harassed him by conducting repeated searches of his person and property in retaliation for grievances that Plaintiff filed against Clemons. (*See* Pl.'s Compl. [1].) Plaintiff also claims that Superintendent Martha Salazar failed to take any action to protect him from the harassment. (*Id.*)

The alleged harassment arises from an October 2, 2009 incident when an officer witnessed Plaintiff take pills that he had procured from another inmate. (Martin Dep. at 34-37). Plaintiff claims

---

[1]        Plaintiff's Complaint incorrectly names Defendant Samuel Clemons as "Clements."

that he had been suffering from a toothache, and testified that approximately one week prior to the incident, had been prescribed a five-day supply of antibiotics and pain medication.[2] (*Id.* at 31-33.) On October 2 2009, Plaintiff—at that time out of medication—told a correctional officer that his teeth hurt, and asked if he could see the dentist. (*Id.* at 33-34.) The officer denied the request, and Plaintiff went to the "deck" to try and get some medication from another inmate.[3] (*Id.* at 34.) Plaintiff obtained four Tylenol tablets from another inmate. (*Id.*) The same correctional officer who had denied Plaintiff's request to see the dentist saw him take the pills. (*Id.* at 34.) The correctional officer took Plaintiff to a nurse and told the nurse that Plaintiff had attempted suicide by taking pills. (Pl.'s 56.1(a) Resp. [103] ¶ 11.) Plaintiff told the medical staff that he had taken Tylenol because of tooth pain; however, Plaintiff was taken to the mental health unit for examination. (*Id.* ¶ 12.) The psychologist in the mental health unit transferred Plaintiff back to his tier, and at some point during this reassignment, Plaintiff was strip-searched. (*Id.* ¶¶ 13, 14.) Plaintiff contends that Officer Clemons directed the strip-search. (*Id.* ¶ 16.) Plaintiff asked Officer Clemons why he was being strip-searched, and Officer Clemons responded that he would strip search Plaintiff whenever he wanted. (*Id.*)

Officer Clemons and another Defendant officer began searching Plaintiff and shaking down his cell on a regular basis over the next few months. (*Id.* ¶¶ 9-25.) At some point, Plaintiff began filing grievances concerning the searches and shake downs. (*Id.* ¶¶ 16-25.) According to Plaintiff, the treatment became "more aggressive" each time he filed a grievance. (*Id.* ¶¶ 16-25.) Plaintiff also claims that many of his grievances were not processed. (*Id.*) Since no action was taken on

---

[2] The available dental records show that Plaintiff received treatment for pain and bleeding in his teeth and gums on eight occasions between October 14, 2009 and February 2, 2010; including a tooth extraction on January 27, 2010. (*See* Cermak Health Servs. of Cook Cnty. Dental Records, Exs. 1-10 to Martin Dep.)

[3] The court takes judicial notice that in another pending lawsuit, Plaintiff has alleged that jail officials were deliberately indifferent to his need for dental care. *Martin v. Dart*, No. 10 C 2162.

his grievances, Plaintiff wrote a letter complaining about the harassment to the Superintendent of the Division where he was held, Defendant Martha Salazar. (Pl.'s 56.1(a) Resp. ¶ 21; Defs.' 56.1(a) [97] ¶ 6.) Salazar never responded to Plaintiff's letter; she claims she never received it. (Defs.' 56.1(a) ¶ 28; Salazar Aff. [97-4] ¶ 10).

In her Affidavit, Salazar explains that Plaintiff was subject to daily searches because he was placed on the "hot list" as a result of the October 2, 2009 incident. (Salazar Aff. ¶¶ 5-7.) The "hot list" is a list of inmates who are believed to have hoarded medications, obtained medications from other inmates, or attempted suicide. (*Id.* ¶ 6.) Inmates on the hot list are patted down and have their property searched at least once a day. (*Id.* ¶ 7.) Salazar explained that the frequent searches are conducted to prevent inmates from hoarding medication and potentially endangering themselves or others. (*Id.*)

## DISCUSSION

Rule 56 directs the court to grant summary judgment if the moving party establishes that there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). In assessing a motion for summary judgment, the court construes all facts and reasonable inferences in favor of the nonmoving party, *Samuelson v. LaPorte Cmty. Sch. Corp.*, 526 F.3d 1046, 1051 (7th Cir. 2008), but will not draw inferences that are "supported by only speculation or conjecture." *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008) (quoting *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004)). Thus, Plaintiff "must do more than raise some metaphysical doubt as to the material facts; [he] must come forward with specific facts showing that there is a genuine issue for trial." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010).

In this case, Plaintiff alleges that he was subjected to adverse treatment in retaliation for his grievances. The First Amendment protects Plaintiff's ability to "utilize available grievance

procedures without threat of recrimination . . . ." *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) (citing *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002)). To establish that this right was violated, Plaintiff must "show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and, (3) the First Amendment activity was at least a motivating factor in Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008); *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).

The first two elements are essentially uncontested: the ability to bring an internal jail grievance is protected by the First Amendment, *Dobbey v. Illinois Dep't of Corr.*, 574 F.3d 443, 446 (7th Cir. 2009), and repeated and unnecessary searches of a person would also likely deter a person's future willingness to file a grievance. *Bridges*, 557 F.3d at 552-53. Plaintiff's claim fails, however, because he has not presented evidence that his protected First Amendment activity motivated the alleged retaliatory action. Such a showing requires evidence of a "causal link between the protected act and the alleged retaliation." *Woodruff*, 542 F.3d at 551. Plaintiff concedes that he took pills, improperly obtained from another detainee, in the presence of a correctional officer. It was this conduct that resulted in his being taken to the mental health ward, subjected to an immediate search, and placed on the "hot list." Plaintiff insists that he took pills for his tooth pain; however, that does not change the fact that he obtained the pills improperly. Plaintiff only began undergoing regular searches after he was placed on the hot list. Significantly, Plaintiff was on the hot list before he had filed any grievances against Officer Clemons, so there was no grievance to retaliate against at the time the "hot list" searches began.

The court recognizes that First Amendment retaliation can occur under the guise of otherwise appropriate conduct. *Gonez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). Defendants may not use the cover of legitimate "hot list" searches for unlawful retaliation over grievances. But Plaintiff offers no evidence that this occurred. Plaintiff finds it suspicious that he was searched each

time he filed a grievance, but "suspicious timing will rarely be sufficient in of itself to create a triable issue" in a First Amendment retaliation case. *Kidwell v. Eisenhauser*, 679 F.3d 957, 966 (7th Cir. 2012) (internal quotation and citations omitted). That timing argument is patently insufficient here, where there is an obvious explanation for the searches: Plaintiff was searched every day because he was on the hot list. In short, there is no evidence of unlawful retaliation, and no unconstitutional conduct.

**CONCLUSION**

Defendants' motion for summary judgment [95] is granted.

ENTER:

Dated: March 20, 2013

REBECCA R. PALLMEYER
United States District Judge